# In the United States Court of Federal Claims

No. 12-48 T
(Filed: July 29, 2013)

```
*************************************
                                   *
UNITED PREPAID NETWORK, INC.,      *
                                   *
                                   *
             Plaintiff,            *
                                   *
    v.                             *
                                   *
THE UNITED STATES,                 *
                                   *
             Defendant.            *
                                   *
*************************************
```

*Charles H. Helein*, the Helein Law Group PLLC, McLean, Virginia, for Plaintiff.

*Fredrick C. Crombie*, Tax Division, Court of Federal Claims Section, United States Department of Justice, Washington, D.C., for Defendant.

———————————————

## OPINION AND ORDER

———————————————

**DAMICH, Judge:**

Plaintiff, United Prepaid Network ("UPN"), seeks a refund of telecommunications excise taxes that it claims were wrongfully imposed by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 4251. The IRS administratively disallowed the refund on the ground, inter alia, that UPN had not demonstrated that it had actually ever paid the excise tax in the first place. Pending before the court is Plaintiff's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims ("RCFC"), or for summary judgment, pursuant to RCFC 56.[1]

For the reasons stated below, the court denies Plaintiff's motion.

---

[1] Plaintiff's Complaint initially included counts of "Failure to Comply with the Administrative Procedure Act," Count II, and "Due Process and Equal Protection Denied," Count III. Defendant moved to dismiss these counts for lack of jurisdiction. In its Reply brief, Plaintiff advised the court and Defendant that it was no longer pursuing these counts. The court granted Plaintiff's concurrent unopposed motion to voluntarily dismiss Counts II and III.

I.      Background

        In its Complaint, UPN, a Texas corporation, represents that it is a distributor of prepaid
telecommunications services purchased from telecommunications carriers (whom it also
references as "providers").  Compl. ¶ 26.  After purchasing from carriers, UPN then sells
"discrete portions" of the services to UPN's customers, "end users," who access the services via
personal identification numbers, or "PINS," over the Internet.  Pl.'s Mem. in Support of Mot.
Pursuant to RCFC 12(c)(1) [sic] and/or RCFC 56 ("Pl.'s Mot.") at 1.  As Plaintiff further
explains,

>       End users purchased these PINS to obtain access on a prepaid basis
>       to designated amounts of communications service such as $5, $10,
>       or $20.  When the PINS were used, the designated amounts of
>       communications services were decremented until the amount
>       prepaid was exhausted, at which time they could purchase another
>       PIN or have their existing ones recharged.

*Id*.

        Plaintiff avers that it was assessed a toll telephone federal excise tax ("FET") on its
purchase of the telecommunications services from its carriers, pursuant to Section 4251 ("§
4251") of the Internal Revenue Code, which imposes a 3% tax on communications services.  26
U.S.C. § 4251(a)-(b).[2]  The tax "shall be paid by the person paying for such" services.  §
4251(a)(2).  "Communications services" are defined as encompassing "(A) local telephone
service; (B) toll telephone service; and (C) teletypewriter exchange service."  § 4251(b)(1).

        In the case of "prepaid telephone cards" ("PTCs"), the statute provides that "the face
amount of such card shall be treated as the amount paid for such communications services" and
that the amount "shall be treated as paid when the card is transferred by any telecommunications
carrier to any person who is not such a carrier."  § 4251(d)(1)(A) and (B).  The term "prepaid
telephone card" means "any card *or other similar arrangement* which permits its holder to obtain
communications services and pay for such services in advance."  § 4251(d)(3) (emphasis added).

        "Toll telephone service" is defined in turn as including "telephonic quality
communication for which (A) there is a toll charge which varies in amount with the *distance* and
elapsed transmission time of each individual communication and (B) the charge is paid within
the United States."  § 4252(b)(1) (emphasis added).  Including the period in question in UPN's
complaint for damages, the IRS had been interpreting the "distance" and "time" variables in the
disjunctive and thus continued to collect the FET on communications services even where the
charge varied only according to elapsed transmission time but not distance.  See Def.'s Opp'n to
Pl.'s Mot. ("Def.'s Opp'n") at 4.

        Various taxpayers challenged the IRS's assessment of the FET where the telephone
service did not vary according to distance and several circuit courts of appeal held that "time-

---

[2]  References hereafter to the IRC are noted simply as "§ (section)."

only" service was not taxable toll telephone service under § 4252(b)(1). *See Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1330-31 (11th Cir. 2005); *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005); *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005); *Fortis v. United States*, 447 F.3d 190 (2d Cir. 2006); *Reese Bros. v. United States*, 447 F.3d 229 (3d Cir. 2006).

As a consequence of these decisions, the IRS announced in May 2006 that it was implementing a refund procedure for telecommunications excise taxes paid for "time-only" service between February 28, 2003, and August 1, 2006 (what UPN describes as the "look back" period, Pl.'s Mot. at 4). *See* IRS Notice 2006-50 (Def.'s Opp'n., Exh. 1).

UPN then filed for a tax refund in the amount of $839,362 it avers it paid to its carrier providers in FET during the look back period and $243,877.39 in interest, for a total claim of $1,083,239 for the period of March 1, 2006, through July 31, 2006.

Defendant argues, however, that "plaintiff has thus far failed to show that it ever paid the tax for which it seeks a refund, so there is no basis to uphold its claim." Def.'s Opp'n at 2. "Although it is 96 paragraphs long, plaintiff's 'Verified Complaint' (the 'Complaint') does not allege any objective fact that might evidence payment of the excise tax." *Id*. at 6. For its part, Plaintiff proffers its invoices from its various carriers to demonstrate that "there is no dispute" that it in fact paid for the communications services it purchased during the look back period. Pl.'s Mot. at 5. While Plaintiff acknowledges that "there was no line item for the FET on any invoice," Compl., ¶ 43, it argues that the only question before the court is "the application of the law to the facts, that is, whether the FET was embedded in the prices paid for the services." Pl.'s Mot. at 5.

II.     Legal Standards

It is well-established, with respect to a motion for judgment on the pleadings pursuant to RCFC 12(c), that "judgment on the pleadings for a plaintiff is appropriate where there are no material facts in dispute and the plaintiff is entitled to judgment as a matter of law." *New Zealand Lamb Co. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994) (citing *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). Allegations of fact by the opposing party are accepted as true and construed in the favor of that party. *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1380 (Fed. Cir. 2011). Thus, when the movant is the plaintiff, it is not entitled to judgment on the pleadings when the defendant's answer "raises issues of fact that, if proved, would defeat recovery." *General Conference Corp. of Seventh-Day Adventists*, 887 F.2d at 230. "For purposes of ruling on a motion for judgment on the pleadings, the traditional standard is that a court must assume that all well-pleaded facts in the nonmovant's pleading are true and that all controverted assertions of the movant's pleadings are false." *Johns-Manville Corp. v. United Stat*es, 12 Cl. Ct. 1, 14 (1987). The court, however, is not bound by assertions in the pleadings "that amount to legal conclusions." *Id*.

Similarly, a motion for summary judgment will be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."

RCFC 56 (c )(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A fact is "material" if it "might affect the outcome" of the suit; a dispute is genuine if the evidence is such that a reasonable trier of fact could find for the nonmoving party.  *Id.* at 248.

The party moving for summary judgment may prevail by demonstrating via the pleadings or other materials in the record (such as depositions, documents, affidavits or declarations, stipulations, admissions, interrogatory answers, etc.) the absence of any genuine issues of material fact or by showing the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23.  If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 324.  Any inferences that may be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Similarly, "[i]n cases in which there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant."  *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984).  "The movant also must demonstrate its entitlement to judgment as a matter of law."  *Id.*

III.   Discussion

Plaintiff's case for judgment, whether on the pleadings or summary judgment, rests in the first instance on its claim of a legal presumption that the FET was embedded within the gross purchase price of the telecommunications services it purchased from its carrier providers.

A.  Plaintiff's Proof of Payment

In its 2006 tax return in which UPN sought the refund of the FET it alleges it paid during the look-back period, UPN submitted, among other documents, invoices it had received from its providers showing payment for the purchase of telecommunications services.  Compl., Exh. A. (at p. 12 of 17 attached as exhibits to Compl.).[3]  As noted, however, the invoices did not include any line item specifically including the FET tax.  Plaintiff makes the argument that, "[b]ecause the FET is built into the charges it is obvious there would be no notation of a tax on the invoice. Nor would there be in any of Plaintiff's accounting records."  Pl.'s Mot. at 27.  Plaintiff asserts that it "proved the amount sought in its refund claim by calculating the 3% tax on the charges it paid its providers.  It set forth the amount of taxes paid along with the interest due thereon in the Form 8913 it filed."  *Id.*

Section 4251 establishes a 3% tax "on amounts paid for communications services."  § 4251(a), (b).  It is the *purchaser* of the communications services who is responsible for paying the tax imposed.  § 4251(a)(2) (emphasis added).  "Communications services" includes "toll

---

[3]  It is uncertain whether UPN actually provided all of the invoices to the IRS during the administrative stage of its quest for the FET refund.  The attachment referenced above notes merely that, in its documentary evidence, the taxpayer provided "Selection of sample invoices."  Furthermore, in its response to Plaintiff's motions, Defendant states, "During the initial day-period, plaintiff produced some, but not all, of its invoices . . ."  Def.'s Resp. at 17.

telephone service." § 4251(b)(1)(B).  Such telephone services may be acquired "by means of a prepaid telephone card."  § 4251(d)(1).  The "face amount" of such card is "treated as paid when the card is transferred by any telecommunications carrier to any person who is not a carrier." § 4251(d)(1)(B).  The term "prepaid telephone card" means "any card *or any other similar arrangement* which permits its holder to obtain communications services and pay for such services in advance."  § 4251(d)(3) (emphasis added)

Treasury Regulation § 49.4251-4 provides that "carrier" means "a telecommunications carrier as defined in 47 U.S.C. 153."  26 C.F.R. § 49.4251-4(b).  UPN avers that it "was not a telecommunications carrier when it made its purchases and qualified therefore as the first purchaser not a carrier."  Pl.'s Mot. at 6.  The first person not a carrier to whom a PTC is transferred by a carrier is defined as a "transferee."  Treas. Reg. § 49.4251-4(b).  The definition of a PTC under the implementing Treasury Regulations encompasses "a card or similar arrangement that permits its holder to obtain a fixed amount of communications services by means of a code (such as personal identification number (PIN)) or other access device provided by the carrier and to pay for those services in advance."  *Id.*

B.  The Taxable Event

Thus, UPN argues that its purchases from its carrier-providers of communications services available to UPN's end users by means of PINs over the Internet constituted the "taxable event when the FET attached."  Pl.'s Mot. at 6.  Under the statutory scheme, UPN therefore avers, it was the taxpayer; the carriers, on the other hand, from whom UPN purchased gross telecommunications services, were obliged under the statutory responsibility, pursuant to § 4291, to collect the FET from UPN.  Section 4291 provides in relevant part: "every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment."  26 U.S.C. § 4291.

The issue, therefore, before the court, as the parties advised in their Joint Preliminary Status Report, "is the factual question of whether plaintiff paid the telecommunications excise tax with respect to non-distance sensitive telecommunications, and if so, the amount of such tax that it paid."  Joint Prelim. Status Report at 5 (Docket # 15, July 25, 2012).

Plaintiff's assertion that it in fact paid the FET, and is entitled accordingly to a refund in full pursuant to IRS Notice 2006-50, rests on a legal presumption that its tax payment was embedded in the overall payment it made to its carriers for the communications services it purchased.  "[T]he very fabric of the administration of the excise tax laws includes reliance on presumptions that the tax is included in the price of the product or service to which the excise tax applies . . ."  Pl.'s Mot. at 10.  Plaintiff argues that Defendant's answer raises no material, controverting facts that, if proved, would prevent recovery.  Defendant, Plaintiff reasons, cannot rely on the absence of a line item for the FET in the invoices to undermine the presumption that UPN's payment for services incorporated the tax.  "Denying the applicability of presumptions does not raise a disputed fact."  Pl.'s Mot. at 12.

C.  Other Excise Tax Regimes

In support of its case for such a legal presumption, Plaintiff cites two examples of excise tax regimes, in fields other than communications, which it avers "show that the IRS relies on presumptions that the payment of excise taxes occurs when the purchaser-taxpayer pays for the goods or services to which the excise tax applies."  *Id.*  The authorities that Plaintiff cites are 27 U.S.C. § 53.92, a firearms regulation ("ATF Reg. § 53.92") pertaining to the Bureau of Alcohol, Tobacco, Firearms and Explosives, and an IRS audit guide, "Coal Excise Tax Audit Technique Guide," pertaining to implementation of Treas. Reg. § 48.4216(a)-(2)(a), which contains language similar to that of ATF Reg. § 53.92.  With respect to their respective excise taxes imposed by Chapter 32 of the Internal Revenue Code ("IRC"), these authorities both state, "Where no separate charge is made as to the tax, it will be presumed that the price charged to the purchaser for the article includes the proper tax, and the proper percentage of such price will be allocated to the tax."

As Defendant notes, however, first, these guidelines do not create any presumption with respect to the *telecommunications* excise tax; second, they involve directly imposed taxes under Chapter 32 ("the tax is levied upon the manufacturer-taxpayer who files its own Forms 720 Quarterly Excise Tax Returns and pays directly to the IRS the amount of tax due," Def.'s Resp. at 12); and, third, they prescribe a method of computing the tax so that the taxpayer does not incur additional tax on the amount of tax imposed (and thus do not speak to tax refund actions).

Interestingly, the statute that governs the refund to manufacturers of such taxes as the firearms and coal taxes that Plaintiff has highlighted does suggest a presumption that the tax was incorporated in the price to the manufacturer's customers.  With respect to abatements, credits, and refunds, 26 U.S.C. § 6416 sets forth a general rule that no refund of "manufacturers taxes" is allowed "unless the person who paid the tax establishes . . ." that it did not include the tax in the price of the article charged to its customers, has repaid the amount of the tax to the ultimate purchaser, or has obtained and filed the written consent of the ultimate purchaser to the making of the refund to the manufacturer.  26 U.S.C. § 6416(a)(1).  By imposing this affirmative burden on the manufacturer-taxpayer, these requirements work to the benefit of the Government "to prevent the unjust enrichment of manufacturers who have shifted the burden to their customers." *Tenneco, Inc. v. United States*, 17 Cl. Ct. 345, 349 (1989).

The telecommunications FET, by contrast, is an indirectly imposed tax under Chapter 33. As Defendant explains, a Chapter 33 tax is not levied upon the manufacturer, but "upon the purchaser-taxpayer who is required to pay the tax to the seller, who then, as the statutorily appointed tax collector, holds the amounts collected in trust for the United States."  Def.'s Resp. at 13, citing §§ 4251(a)(2), 4261(d), 4271(b), 4291, and Treas. Reg. § 49.4291-1.  The seller-collector then files the Form 720 and remits the amounts collected to the IRS.  In the circumstances at issue here, UPN is the purchaser-taxpayer; its carriers were the seller-collectors.

The Government argues here that reading a presumption into Chapter 33 taxes that the tax has been embedded in the purchase price would work to the detriment of the United States and "*promote*, at the expense of government coffers, the unjust enrichment of persons who never actually paid the tax."  Def.'s Resp. at 13.  The Government's reasoning seems to be that, if the

purchaser-taxpayer never actually paid the tax, as it argues of UPN here, and a presumption that the tax is embedded is read into the purchase price, the purported "taxpayer" may receive a windfall contrary to "the vital interest of the government in acquiring its lifeblood, revenue." *Id.* at 15 (quoting *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 21 (2000)).

Accordingly, in the view of the Government, the presumption that UPN argues stems in part from IRS practices in these other tax arenas and which it maintains inures to the benefit of the taxpayer-purchaser in the context of a Chapter 33 indirect tax "runs afoul of well-established Supreme Court precedent that in a refund suit, it is the taxpayer-plaintiff that bears the burden of proving, by a preponderance of the evidence, both that he has made an 'overpayment' and the amount of that overpayment." Def.'s Resp. at 15, citing *Helvering v. Taylor*, 293 U.S. 507, 514 (1935). Defendant's objection in this case – that UPN first has to prove that it has paid the tax for which it seeks a refund – is no impediment, however, if Plaintiff's assertion of a presumption of payment in the purchase price passes muster. If the law provides such an presumption, Plaintiff's "proof" may be considered demonstrated by its showing of having paid the gross purchase price to which the percentage excise tax attached. The question of the existence, or not, of such a presumption is critical.

D.   Reasonable Presumption that Cost of the Service Increased by Amount of the Tax

More significantly, in addition to relying on the language of ATF Reg. § 53.92 and the Coal Excise Tax Audit Technique Guide for its overarching point about "the very fabric of the administration of the excise tax laws," Pl.'s Mot. at 10, Plaintiff also points to the decision of the United States Court of Claims in *Gumpert v. United States*, 296 F.2d 927 (Ct. Cl. 1961). There, the court observed, "Where an operator is performing a service that is subject to a tax, and that tax is a flat percentage of the cost of the service, it is reasonable to presume that the cost of the service is increased by the amount of the tax."

In *Gumpert*, the owner-operators of a sightseeing business sought a refund of an excise tax imposed on transportation services which they contended were erroneously paid in light of certain exemptions in the tax statute. As the Government notes, the transportation excise tax at issue in *Gumpert* was an indirect, Chapter 33 tax, such as at issue here. Def.'s Resp. at 14. As the tax collectors and remitters, the plaintiffs were obliged under the pertinent refund statutes, 26 U.S.C. § 3471 and 26 U.S.C § 6415 (comparable to the refund procedures for direct taxes under § 6416) to establish that they had repaid the amount of the taxes to the persons from whom they collected them or had obtained their consent to the plaintiffs' collection of the refund. *Gumpert*, 296 F.2d at 928. The plaintiffs in *Gumpert* were in the same posture as the telecommunications carriers from whom UPN purchased communications services for its end-users.

There was no issue in *Gumpert* about whether the taxes had in fact been paid and remitted to the Government. The question instead was whether the plaintiffs, as the tax collectors, had standing to sue for the refund. Plaintiffs argued that they did not have to meet the § 6415 requirements because they had not passed the tax on to their customers but rather had "borne the economic burden of the tax" by paying it out of their own pockets. The court held that the plaintiffs had not met their burden in either respect. In the course of its inquiry, the court remarked on the presumption at the heart of UPN's argument here:

> Where an operator is performing a service that is subject to a tax, and that tax is a flat percentage of the cost of the service, it is reasonable to presume that the cost of the service is increased by the amount of the tax.  This is a rebuttable presumption, to be sure, but the burden is on the entrepreneur to show that he paid the tax out of his own pocket rather than to have passed this expense on to the customer.

*Gumpert*, 296 F.2d at 929.

Thus, the Court of Claims recognized as "reasonable" a presumption that a flat percentage excise tax can be presumed to have been embedded in the amount charged to the service purchaser.  Although the presumption worked to the detriment of the tax collector-plaintiffs in *Gumpert*, whereas it inures here in favor of UPN, the putative taxpayer, the notion of such a presumption has a clear foundation in the precedent governing this court.  Accordingly, this court agrees with UPN that there is a presumption that UPN paid the FET, as subsumed in the invoiced amounts, when it paid for the telecommunications services from its providers.  Defendant argues that *Gumpert* is inapposite because here the Government is disputing "the predicate question whether the tax was paid at all" and argues that *Gumpert* "does not address that predicate question."[4]  Not so.  The presumption itself answers the question whether the tax was paid, so long as UPN paid the overall bill from its carriers.

E.  The Presumption is Subject to Rebuttal

While the presumption works in favor of UPN in this regard, the Government makes a telling point that the presumption is rebuttable and that Defendant should be entitled, under RCFC 56(d), to take discovery to rebut that presumption.  The court also notes the provider contract, attached as Exhibit 2 to Defendant's Response, by which UPN obtained telecommunications services from one of its providers, Network IP.  The contract specifically recites that UPN, the "Customer," was to be responsible for the payment of all applicable taxes, but that the "pricing schedule" of that provider did not include any taxes.

In paragraph 2.6 of the contract, UPN agreed that

> Customer shall be responsible for payment of all applicable taxes or assessments due to local, state, federal, and international taxing authorities, including income, sales, use, other excise taxes or assessments (including Universal Service Fund and Payphone Compensation) relating to the Services.  Customer agrees to indemnify and hold Provider harmless against any and all claims or

---

[4]  The Government also raises a policy objection.  The presumption advocated by plaintiff "would open Treasury coffers to every person holding an invoice for non-distance sensitive telecommunications services, regardless of whether that person ever paid the tax, and thereby put at risk the government's 'vital interest' in 'lifeblood' revenues."  Def.'s Resp. at 16.  With regard to the Government's "lifeblood," UPN raises a legitimate question why the IRS has not sought recovery from the carriers, on the basis of their independent statutory obligation to have collected and remitted the FET to the IRS.

> demands made upon Provider or Customer as a result of
> Customer's failure to properly pay any such taxes or assessments
> regardless of whether such failure was the result of negligence,
> gross negligence, willful misconduct, or fraud.

Def.'s Resp., Exh. 2 at 3, ¶ 2.6.

In paragraph 3.3.1, UPN agreed that

> Provider agrees to provide Services for Customer in accordance
> with the pricing schedule set forth in Table 1 to this Agreement.  It
> is understood that such pricing does not include any taxes,
> assessments or surcharges.

*Id.* at 4, ¶ 3.3.1.

In conjunction with the lack of any line-item on UPN's invoices that reflects any separate
payment by UPN of the FET, if the invoiced purchase of services from this carrier reflects the
pricing schedule referenced in the contract and the pricing does not include the FET, then the
contract strongly suggests that UPN did not pay embedded excise taxes in the gross purchase
price.  Defendant is entitled to seek discovery to try to develop any correlation between pricing
and invoice with respect to whether or not UPN in fact paid the FET to Network IP when it paid
the Network IP invoices.

There is one other provider contract that has been provided to the court in this litigation.
In its Reply brief, UPN has attached the contract that it reached with Transcom Communications
("Transcom").  Pl.'s Reply, Exh. A.  The Transcom contract also addresses the payment of taxes:

> CUSTOMER shall be responsible for payment of all applicable
> taxes or assessments due to local, state, federal, and international
> taxing autahoritiets, including income, sales, use, other excise
> taxes or assessments (including Universal Service Fund and Dial-
> around Compensation) resulting from CUSTOMER's resale of the
> Services to Pin Holders.  CUSTOMER agrees to indemnify and
> hold TRANSCOM harmless against any and all claims or demands
> made upon TRANSCOM or CUSTOMER as a result of
> CUSTOMER's failure to properly pay any such taxes or
> assessments regardless of whether such failure was the result of
> negligence, gross negligence, willful misconduct, or fraud.
> CUSTOMER will deliver TRANSCOM all appropriate tax
> exemption certificates, resale certificates and other related
> documents on a timely basis.

*Id.* at 3, ¶ 3.7.

The Transcom contract also addressed the pricing of its services, in a paragraph entitled "Wholesale Pricing,"

> TRANSCOM agrees to provide Services to CUSTOMER in accordance with the pricing schedule set forth in the Exhibits and Addendums to this Agreement.  TRANSCOM will fully account to CUSTOMER in its invoices to clearly distinguish between its charges for Services and any taxes, assessments or surcharges added in the determination of all final invoice amounts.

*Id*. at 4, ¶ 3.8.

If the invoice(s) that UPN paid for Transcom's services did not include any line item for the FET, this last paragraph of UPN's contract with Transcom then strongly suggests, even more so that UPN's contract with Network IP, that the FET was not embedded in the gross purchase price and thus that UPN did not in fact pay the FET to Transcom.  Defendant is entitled to develop facts regarding UPN's dealing with Transcom in rebuttal of the presumption, flowing from *Gumpert*, that the tax was embedded in UPN's payment for services from Transcom.

Because the Network IP and Transcom contracts are the only ones that have been produced thus far, Defendant is not in a position at this point to gainsay the presumption that works in UPN's favor with respect to contracts that UPN reached with any of its other provider-carriers.  The court finds that Defendant is entitled to pursue appropriate discovery to determine whether it can offer any rebuttal to the presumption that would otherwise govern UPN's payment to those other providers for telecommunications services.

    F.   Amount of Alleged Overpayment

Defendant also opposes Plaintiff's motions on the grounds that "[t]he parties dispute the amount of overpayment, if any."  Def.'s Resp. at 18.  Defendant argues, "the amount of the overpayment is intimately tied with the type of services plaintiff purchased," *id*., referring to the question whether the "face amount" of the PTCs purchased were in the form of "dollar cards," "tariffed unit cards," or "untariffed unit cards."  Defendant avers that it lacks the knowledge and information to admit or deny the truth of Plaintiff's allegations regarding the nature of the services it purchased and is entitled to discovery "to fill in the gap in plaintiff's complaint."  *Id*. at 21.

Plaintiff responds that Defendant is fully aware that UPN did not purchase actual "cards," but rather PINs, to be sold over the Internet with an obvious face value, "i.e., a fixed dollar amount which would be decremented when used."  Pl.'s Reply at 14.  Furthermore, the FET was paid by UPN as a percentage of the wholesale prices it paid its providers.  The type or "face value" of the "card" purchased from UPN by its end-users is irrelevant.  "Defendant cannot create disputed facts by seeking to apply provisions that have no relevancy to the actual facts of the taxable transaction."  *Id*. at 15.

Like UPN, the court is also not convinced of the relevancy of Defendant's objection. Given, however, that the court has determined to deny Plaintiff's motions and allow Defendant the opportunity for discovery, it may be that the Government, in the course of discovery, can elicit facts that may provide more clarity to its arguments about the amount of the FET in question, in addition to whether the FET was paid in the first place.

IV.     Conclusion

For the reasons stated above, the court denies Plaintiff's motion for judgment on the pleadings or, in the alternative, for summary judgment.

The parties shall file a Joint Status Report, due on or before August 23, 2013, proposing a schedule for discovery in this matter.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge